IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 26, 2016 Session

IN RE SELENA L. ET AL.

Appeal from the Circuit Court for Bradley County
Nos. V-14-611; V-14-612     J. Michael Sharp, Judge

_____

No. E2015-02059-COA-R3-PT-FILED-JULY 27, 2016

_____

This is a termination of parental rights case regarding the parental rights of the mother, Brandy L. ("Mother") to her minor children, Selena L. and Isabella H., ages five and two respectively when the termination action was filed (collectively, "the Children"). Mother voluntarily placed Selena L. in the custody of a relative in 2009, shortly after the child's birth. On April 13, 2012, the Hamilton County Juvenile Court ("juvenile court") placed the Children into the custody of the maternal great-grandmother, Vickie R. ("Petitioner"), upon Petitioner's filing an action for custody.[1] On August 25, 2014, Petitioner filed petitions in the Bradley County Circuit Court ("trial court") seeking to terminate the parental rights of Mother and to adopt the Children.[2] Following a bench trial, the court terminated Mother's parental rights to the Children after determining by clear and convincing evidence that Mother had abandoned the Children by: (1) willfully failing to visit them, (2) willfully failing to financially support them, and (3) exhibiting a wanton disregard toward their welfare. The trial court further found by clear and convincing evidence that terminating Mother's parental rights was in the best interest of the Children. Mother has appealed.[3] We reverse the trial court's finding that Mother abandoned the Children by willfully failing to support them during the determinative four-month period. We affirm the trial court's judgment in all other respects, including the termination of Mother's parental rights to the Children.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Reversed in Part; Case Remanded**

---

[1] The pleadings filed in the juvenile court in the underlying custody action are not contained in the record on appeal for the termination action.

[2] Petitioner filed separate petitions for each child with the trial court, containing virtually identical factual allegations against Mother.

[3] The fathers of the Children, whose respective parental rights to the Children were also terminated by the trial court, are not participating in this appeal. Thus, we will limit our discussion to facts and conclusions of law which are relevant to the termination of Mother's parental rights.

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. McCLARTY, J., joined.

Rachel Fisher, Cohutta, Georgia, for the appellant, Brandy L.

Hanna Stokes, Chattanooga, Tennessee, for the appellee, Vickie R.

**OPINION**

I.  Factual and Procedural Background

This termination of parental rights action began when Petitioner filed petitions with the trial court on August 25, 2014, seeking to terminate Mother's parental rights and to adopt the Children.  Petitioner alleged, *inter alia*, that Mother had abandoned the Children by willfully failing to support them, willfully failing to visit them, and participating in behavior prior to her incarceration that exhibited a wanton disregard for the welfare of the Children.  Petitioner further alleged that the termination of Mother's parental rights was in the best interest of the Children.  While incarcerated, Mother filed a *pro se* letter with the court, contesting the allegations.  Mother subsequently filed an answer to the petitions, formally denying the allegations.

At the time the termination action was filed, Petitioner had maintained custody of the Children for approximately two years and four months.  Testimony demonstrated that Mother had voluntarily relinquished custody of Selena L. to the child's maternal grandmother in 2009.  Mother offered postpartum depression as reason for her relinquishment of custody.  Petitioner testified, however, that Mother had admitted that the change of custody was due to Mother's methamphetamine use.  Regarding Isabella H., Mother retained custody until the child was removed on April 13, 2012, upon Petitioner's initial custody action.  At that time, Petitioner sought custody of both Children on April 13, 2012, following an incident wherein Selena L. was present in a vehicle containing a methamphetamine lab, as discovered by law enforcement during a routine traffic stop.  At the time of this incident, the maternal grandmother was also present in the vehicle.

After the Children were placed in the custody of Petitioner, the juvenile court ordered that Mother participate in visitation with the Children every Sunday from 2:00 p.m. until 8:00 p.m.  During March of 2013, upon agreement of the parties, Mother's visitation time was changed to 1:00 p.m. through 7:00 p.m. every Sunday.[4]  The visitations were to occur at Petitioner's home.  Under the agreement, Mother was

_____

[4] This visitation schedule was in effect during the four months prior to Mother's subsequent incarceration.

2

provided a thirty-minute "grace period" to arrive for each visitation. Should Mother not appear or contact Petitioner by 1:30 p.m. on the date of the visit, the visit would be forfeited by Mother. In the event that Mother contacted Petitioner, the visitation would be forfeited if Mother had not appeared by 2:00 p.m.[5] The juvenile court did not require Mother to contact Petitioner prior to any visitation. Petitioner and Mother agreed that Petitioner never turned Mother away from a visit even when Mother appeared late for the visitation regardless of Mother's tardiness. According to Petitioner, Mother was late for a majority of her visits with the Children if she appeared at all.

Testimony further established that during the pendency of the juvenile court action, Petitioner and Mother reached an additional agreement, which provided that Mother would receive increased visitation with the Children if she completed certain requirements, including providing clean drug screens and attending drug counseling. Although Mother indicated that she completed a treatment program twice during the pendency of the juvenile court case, she was unable to provide the trial court with evidence to support her testimony.[6] According to Petitioner, Mother never presented evidence of the successful drug screens or completion of drug counseling.

The evidence also established a series of criminal convictions concerning Mother. On January 10, 2014, Mother was arrested for felony theft of property related to an incident occurring on December 19, 2013. Mother was released on bond on January 10, 2014. Mother was subsequently convicted of felony theft of property on October 7, 2014, and was sentenced to two years of incarceration. On April 18, 2014, Mother was arrested and charged with several drug-related offenses, eventually resulting in convictions for possession of methamphetamine, possession of amphetamine, and possession of drug paraphernalia. Mother remained in jail from April 19, 2014, until April 29, 2014, before being released on bond. On May 18, 2014, Mother was arrested

---

[5] The parties ostensibly agreed upon the following visitation schedule in juvenile court on March 13, 2013:

> [Petitioner] requested the Court change the current visitation schedule to allow the children to be in bed earlier. The current visitation is every Sunday from 2:00 p.m. until 8:00 p.m. The mother agreed to visit from 1:00 p.m. until 7:00 p.m. every Sunday. The maternal grandmother is now allowed to accompany the mother on the third Sunday since the Restraining Order has been lifted. Mother will have a thirty (30) minute grace period after which the visit will be forfeited if she has not contacted [Petitioner]. Any visit will be forfeited after 2:00 p.m., even if the mother has contacted [Petitioner].

The record before us contains no juvenile court order memorializing the respective agreement. The limited evidence regarding this agreement is the parties' testimony and an apparent summary of the court proceedings that took place on March 13, 2013.

[6] Mother explained that she lost her paperwork while incarcerated.

again on drug charges and was eventually convicted of additional counts of possession of methamphetamine and possession of drug paraphernalia. The trial court took judicial notice that Mother remained incarcerated until January 2015.

Although no court order existed directing Mother to pay child support for the Children, Mother admitted that she was aware of her duty to support the Children. According to Mother, Petitioner had informed her that the Children did not need anything but that Mother could purchase anything for the Children that she desired. While Mother conceded that she had not provided any financial support for the Children from January 2014 through May 2014, she testified that she did bring them gifts, such as sunglasses or candy, when she attended visitations. Mother also stated that prior to her incarceration in 2014, she resided with her former paramour, who paid her bills. As explained by Mother, her former paramour died of a drug overdose in April 2014, shortly before she was incarcerated. Approximately one week earlier, she moved in with her father.

The trial court conducted a bench trial over the course of two days on March 31, 2015, and September 3, 2015. During the first day of trial, Mother indicated that she had been drug-free since her release from incarceration in January 2015. Mother acknowledged that she visited the Children only once following her release. While Mother had not yet attended counseling, she had an appointment scheduled. During the second day of trial, Mother indicated that although she had discussed counseling with a provider, she had not actually begun.

Regarding efforts to gain employment following her release from incarceration, Mother claimed that she had submitted "thousands" of job applications. She related that her lack of a high school diploma and her status as a convicted felon limited her employment options. Mother stated that in March 2015, she had two job interviews. Although she was offered employment, she declined the job opportunity because she lacked transportation. By September 3, 2015, Mother was employed. Her pay stubs evinced a total gross income of $131.08. Concerning Mother's residence, she lived with a relative who had criminal convictions involving methamphetamine. The amount of rent Mother paid varied from month to month.

Following the conclusion of trial, the trial court entered a final order on September 25, 2015, terminating Mother's parental rights to the Children. The court found by clear and convincing evidence that Mother had abandoned the Children by: (1) willfully failing to visit them, (2) willfully failing to provide financial support for them, and (3) exhibiting a wanton disregard for the welfare of the Children prior to her incarceration. The trial court further found by clear and convincing evidence that termination of Mother's parental rights was in the best interest of the Children. Mother timely appealed.

4

## II. Issues Presented

Mother presents four issues for our review, which we have restated as follows:

1.	Whether the trial court erred in determining that Mother willfully failed to visit her Children during the determinative four-month period.

2.	Whether the trial court erred in determining that Mother willfully failed to financially support her Children during the determinative four-month period.

3.	Whether the trial court erred in determining that prior to Mother's incarceration, she engaged in conduct exhibiting a wanton disregard for the welfare of the Children.

4.	Whether the trial court erred in determining that the termination of Mother's parental rights was in the best interest of the Children.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *See In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). As our Supreme Court has recently explained:

5

The parental rights at stake are "far more precious than any property right." *Santosky*, 455 U.S. at 758-59. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky,* 455 U.S. at 759 (recognizing that a decison terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.* 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

\* \* \*

In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-524. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard*, 319 S.W.3d 586, 596 (Tenn. 2010).

6

IV. Statutory Abandonment

Tennessee Code Annotated § 36-1-113 (Supp. 2015) lists the statutory grounds for termination of parental rights, providing in relevant part as follows:

(a)     The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c)     Termination of parental or guardianship rights must be based upon:

(1)     A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)     That termination of the parent's or guardian's rights is in the best interests of the child.

The trial court terminated Mother's parental rights upon statutory grounds that she abandoned the Children. Tennessee Code Annotated § 36-1-113(g)(1) provides in relevant part:

(g)     Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1)     Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred; . . .

In the case at bar, Mother was arrested on April 18, 2014, and again on May 18, 2014. Because Mother remained incarcerated at the time the petition was filed to terminate her parental rights, the definition of abandonment contained within Tennessee

7

Code Annotated § 36-1-102(1)(A)(iv) (Supp. 2015) applies.  This subdivision provides in pertinent part:

> (iv)    A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child . . . .

Pursuant to this definition, the determinative period applicable to the grounds of willful failure to support and willful failure to visit began four months immediately preceding Mother's arrest on April 18, 2014.  The relevant four-month period therefore spanned December 18, 2013, through April 17, 2014.  *See In re D.H.B.,* No. E2014-00063-COA-R3-PT, 2015 WL 1870303 at *8 (Tenn. Ct. App. Apr. 23, 2015) (interpreting the four-month period "immediately preceding" the parent's incarceration as ending on the day before the actual date of incarceration).  In calculating the four-month period preceding Mother's incarceration, the trial court looked to the date of Mother's May 2014 incarceration.  The record and Mother's testimony support the trial court's finding that Mother was arrested on May 18, 2014, and remained incarcerated from "May of 2014 through January of 2015."  However, the record reflects that Mother was also arrested on April 18, 2014, and remained incarcerated until April 29, 2014, shortly before the arrest occurring in May 2014.[7]  Due to Mother's arrest and incarceration in April 2014, we conclude that the relevant four-month period must be recognized as encompassing the four months immediately preceding Mother's arrest on April 18, 2014.

Pursuant to the statutory definition of abandonment, the trial court must also find that a parent's failure to visit or support during the determinative period was willful.  *See*

---

[7] The record reflects that Mother was also arrested on January 10, 2014, but was released from jail that same day.  This Court has recently held that a parent's entry into police custody and resultant brief incarceration of less than twenty-four hours without a court-imposed sentence of incarceration is not sufficient for purposes of classifying the parent as an "incarcerated or recently incarcerated parent to which Tenn. Code Ann. 36-1-102(1)(A)(iv) applies."  *See In re Kaitlin W.*, E2015-01553-COA-R3-PT, 2016 WL 2931326 at *8 (Tenn. Ct. App. May 16, 2016); *see also In re Courtney N.*, E2012-01642-COA-R3-PT, 2013 WL 2395003 (Tenn. Ct. App. May 31, 2013).  Therefore, Mother's January 2014 arrest does not affect the statutorily determinative period.

8

Tenn. Code Ann. § 36-1-102(1)(A)(iv); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). As this Court has previously explained:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.

*In re Audrey S.*, 182 S.W.3d at 863.

Failure to visit or support a child is "willful" when a person is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id.* at 864. Further, failure to visit or support is not excused by another person's conduct "unless the conduct actually prevents the person with the obligation from performing his or her duty . . . or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child." *Id.* This Court further explained:

> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id.* (citations omitted).

This Court has often held that a parent's "demeanor and credibility as a witness also play an important role in determining intent, and trial courts are accordingly in the best position to make such determinations." *In re Adoption of Destiny R.D.*, No. M2011-01153-COA-R3-PT, 2012 WL 1066496 at *7 (Tenn. Ct. App. Mar. 27, 2012) (citing *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003)). Further, as Tennessee Code Annotated § 36-1-102(1)(G) expressly provides: "Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made." Incorporating the foregoing analysis, we shall review in turn each form of statutory abandonment found by the trial court.

## A. Willful Failure to Visit

Mother contends that the trial court erred in determining that clear and convincing evidence existed to terminate Mother's parental rights on the ground that Mother willfully failed to visit the Children during the determinative four-month period. Mother argues that the trial court failed to consider evidence in support of Mother's assertion that she visited the Children during the relevant period. Mother further contends that her failure to visit the Children was not willful considering her lack of transportation and the Petitioner's purported interference with her visitation. Upon a thorough review of the record, we disagree and conclude that the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

Mother argues that the trial court erred by failing to properly weigh evidence presented of a visit that Mother alleged occurred on January 22, 2014. Having considered this evidence, the trial court found that the visit did not occur. We emphasize that the trial court found mother's credibility as a witness to be lacking regarding her testimony concerning the dates of her visits with the Children. In contrast, the trial court found "[Petitioner's] testimony to be much more credible than [Mother's] testimony as to this issue." We further emphasize that the trial court's determinations regarding witness credibility are afforded great weight on appeal. *See Jones,* 92 S.W.3d at 838. In its final order, the trial court made the following findings of fact regarding the dates of Mother's visitation with the Children in relevant part:

> The court finds that the mother only visited the children a total of three times for a short period of time during the entire year of 2013. The court finds that the mother's last visit with the children, prior to the mother's incarceration of May of 2014, was on Mother's Day of 2013.[8]

Having determined that the correct four-month period was December 18, 2013, through April 17, 2014, we further determine that the trial court made findings of fact encompassing the correct four-month period despite its miscalculation. The trial court found that Mother had willfully failed to visit the Children from as early as May 2013 through her incarceration in May 2014. Since the trial court's finding regarding the time period that Mother willfully failed to visit the Children necessarily included a determination that Mother willfully failed to visit from December 18, 2013, through April 17, 2014, the trial court thereby found that Mother had failed to visit the Children during the correct period. As such, in this case, the court's miscalculation of the relevant statutory period on this issue constitutes harmless error.[9]

---

[8] This Court takes judicial notice that Mother's Day in the year 2013 occurred on May 12, 2013. *See* Tenn. R. Evid. 201(b)(2).

[9] This Court in no way concludes that the miscalculation of the relevant period should be harmless error

Mother contends, however, that her failure to visit the Children was not willful in view of her lack of transportation and Petitioner's interference. *See In re M.L.D.,* 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) ("The element of willfulness is central to the determination of abandonment.") A parent's failure to visit is not excused by another individual's conduct unless "those acts actually prevent the parent from visiting the child or constitute a significant restraint or interference with the parent's attempts to visit the child." *In re M.L.P.,* 281 S.W.3d 387, 393 (Tenn. 2009) (citing *In re Audrey S*, 182 S.W.3d at 864); *see also In re M.L.D.,* 182 S.W.3d at 896.

The trial court made the following findings of fact in its final judgment with respect to Mother's willfulness as to her failure to visit:

> The court heard the testimony of [Petitioner] that she did not prevent the mother from visiting the children, and had in fact gone numerous time[s] to pick up the mother to give her a ride so that she could visit with the children. However, [Petitioner] also testified that on the rare occasions when the mother did take advantage of any visitation with her children, that the mother was late every single time to the visits. [Petitioner] also testified, and provided pictures for the court, of the mother's sleeping during at least two of the visits with her children. The order of the Hamilton County Juvenile Court, wherein [Petitioner] was given custody of the children, specifically states that the mother would forfeit her visitation, which was set for every Sunday, if the mother was more than 15 minutes late. Even though[] the mother violated this provision every time she visited, the court finds that [Petitioner] continued to allow the mother to exercise her visitation, even when [Mother] chose to arrive hours late, if at all. The court takes judicial notice of the fact that [Petitioner] testified that there were numerous times that [Mother] told her oldest child that she would be back to see her in a week, and that [Mother] rarely, if ever, kept her word to her child. [Petitioner] testified that this caused great disappointment and emotional hardship to the child in that the child often stood at the door or window looking for her mother to return because her mother had told the child she would return. It was traumatic for the child when the mother continually failed to do what she promised her child she would do. The mother testified that her lack of visits with her children [was] caused, at least in part, due to [Petitioner] not answering her phone

in every case. In contrast, this Court determines that in this particular case, due to the extensive findings of fact by the trial court regarding the ground of willful failure to visit, the miscalculation of the relevant period was harmless.

calls. However, when questioned on cross-examination, the mother admitted that every time that she attempted to exercise her visitation, that the petitioner was in fact at home with the children, and the mother never missed a visit because of the petitioner and the children were not at home. The mother also testified that she had problems getting transportation, however, the mother also admitted that the prior visitation order did not require an advance phone call or text, and that she could simply show up each week for the visit. Ultimately, the court finds that the mother was simply making excuses and attempting to blame [Petitioner] for her own failures to visit when in fact, the court finds that it was not [Petitioner's] fault on any occasion that the mother failed to visit her children. The court finds that the mother's lack of visiting her children was due to her own willful failure to visit, and was done so by her personal choice.

We note that although we review the trial court's findings of fact with a presumption of correctness, the trial court's conclusion that Mother's failure to visit constituted willful abandonment is a question of law, which we review *de novo* with no presumption of correctness. *See In re Adoption of A.M.H.,* 215 S.W.3d 793, 810 (Tenn. 2007).

Mother specifically argues on appeal that Petitioner interfered with Mother's visitation by "Petitioner's actions toward Mother's reliable sources of transportation and Petitioner's refusal to answer the phone." Petitioner denied any interference with Mother's visitation, testifying that she encouraged Mother to visit and even provided transportation for Mother on multiple occasions. Mother testified that Petitioner failed to answer telephone calls and text messages from Mother to allow Mother to confirm the visits. We note the proof showed that Mother often called from telephones other than her own. The trial court found and Mother admitted that there was no court order requiring Mother to confirm the visits. Instead, the juvenile court had provided Mother a specific timeframe for visitation to occur every week, and Mother was simply to appear at Petitioner's home for the visit at the appointed time.

In support of her argument that Petitioner interfered with her visitation, Mother presented a text message from Mother to Petitioner. In this text message, Mother stated that Petitioner denied her a visit with the Children. We note that the text message transmitted by Mother to Petitioner was sent at 1:44 p.m. on the date of the visit, fourteen minutes after the grace period had ended. Mother had thereby forfeited her visitation on that date.[10] Mother provided no evidence that she had contacted Petitioner prior to 1:30

---

[10] Mother testified that she sent the text message to Petitioner on February 22, 2015, following Mother's incarceration. The record reflects that Mother was released from jail in January 2015. We note that this visit would be outside the determinative period for failure to visit. However, it may be necessary to consider actions outside the relevant period when determining whether Mother's actions were considered

p.m. on the date of the text message. Mother also admitted that an ongoing concern during the juvenile court action was her tardiness and failure to attend visits with the Children.

Having carefully reviewed the evidence, we conclude that Petitioner's actions did not prevent Mother from visiting the Children or amount to a significant restraint on Mother's ability to visit. In fact, Mother was never turned away when she appeared for a visit. Petitioner testified that she was home every Sunday at the appropriate time while Mother acknowledged that she never appeared for a visit to find Petitioner and the Children absent. Even had Petitioner not answered telephone calls from Mother, the juvenile court and the agreement of the parties had not required Mother to confirm visits with Petitioner in advance. In early 2013, Mother was simply to appear each Sunday at 1:00 p.m. for her visits with the Children. Mother recognized that appearing for the visits was her responsibility. Despite that knowledge, Mother conceded that she did not consider alternate transportation, such as a bus, taxi, or bicycle, but relied solely on friends and family to transport her to the visits.

We further determine Mother's claim that Petitioner "assured Mother's failure by frustrating Mother's avenues of transportation through legal action" to be without merit. Mother asserts that Petitioner contacted law enforcement during one of Mother's visits with the Children and thus frustrated Mother's transportation options. In support, Mother presented a police report regarding one incident occurring on December 9, 2012. Although Mother testified that Petitioner was involved in an argument with other individuals at the visit, the report Mother submitted indicates that the altercation occurred during one of Mother's visits between Mother and the maternal grandfather. Mother claimed that this incident with law enforcement caused one of the individuals she deemed as reliable transportation to no longer transport her to visits. Mother's testimony regarding Petitioner's involvement in the altercation was inconsistent with the evidence she presented at trial. Mother also asserts that Petitioner obtained a restraining order against the maternal grandmother, who was Mother's reliable transportation to the visits with the Children. The restraining order was in effect in 2013 but not during the four-month determinative period preceding Mother's incarceration.[11] According to Mother's testimony, the maternal grandmother was willing to transport Mother to her visits with the Children after the restraining order ended.

willful. *See In re Jamie G.*, M2014-01310-COA-R3-PT, 2015 WL 3456437 at *12 (Tenn. Ct. App. May 29, 2015) *perm. app. denied* (Tenn. Aug. 28, 2015); *In re Alex B.T.*, No. W2011-00511-COA-R3-PT, 2011 WL 5549757 at *6 (Tenn. Ct. App. Nov. 15, 2011) ("[C]ourts often consider events that occurred prior to the relevant period to determine if there was interference with the biological parent's attempts to visit or support the child.").

[11] The portion of the juvenile court record that was entered as an exhibit at trial reflects that on or before March 13, 2013, the restraining order had been lifted.

On this issue, the trial court found that Mother's testimony was not credible and that Mother "was simply making excuses and attempting to blame [Petitioner] for her own failures to visit . . . ." The trial court concluded that Petitioner had proven by clear and convincing evidence that Mother willfully failed to visit her children during the four months preceding her incarceration. Giving great deference to the trial court's determination of the credibility of witnesses and noting the proper four-month period, we conclude that the evidence preponderates in favor of the trial court's determination that Mother willfully failed to visit the Children for four months preceding her incarceration. Therefore, the trial court did not err in terminating Mother's parental rights based on her willful failure to visit the Children.

## B. Abandonment by Willful Failure to Support

Mother contends that the trial court erred by finding that Mother willfully failed to financially support the Children. Mother asserts that because she brought gifts, such as sunglasses or candy, to the Children when she participated in a visit on January 22, 2014, during the determinative period, she attempted to support the Children. Mother also reasons that her failure to support the Children was not willful due to her inability to pay child support. *See In re R.L.F.*, 278 S.W.3d 305, 320 (Tenn. Ct. App. 2008) ("'A parent who fails to support a child because he or she is financially unable to do so is not willfully failing to support the child.'") (quoting *In re M.J.M., Jr.*, No. M2004-02377-COA-R3-PT, 2005 WL 873302 at *8 n.17 (Tenn. Ct. App. Apr. 14, 2005)), *overruled on other grounds by In re Kaliyah S.,* 455 S.W.3d 533 (Tenn. 2015). Mother argues that she "is not self-supporting and, therefore, is likewise unable to support the children." Upon a thorough review of the record, we determine that the evidence preponderates in favor of the trial court's finding that Mother paid no child support during the four months prior to her incarceration. However, we determine that the evidence does not preponderate in favor of the trial court's determination that Mother's failure to support the Children was willful during the relevant period.

Regarding Mother's nonpayment of support for the Children, the trial court stated in its final judgment in pertinent part:

 [Petitioner] testified that the mother has not provided any support for the minor children, nor provided any gifts for the minor children for the entirety of the time that she had the children since April of 2012. The mother testified that [Petitioner] never told her that the children needed anything. She also testified that no one ever told her she was supposed to pay any support. The court finds that there is no question that the mother provided no support of any type for the children for well in excess of the

14

four months preceding the mother's incarceration in May of 2014.

\* \* \*

The court finds, and the mother testified, that from December of 2013 through the date of her release from incarceration in January of 2015, that the mother never brought any gifts for the children, nor did she provide any support of any type for the children during this period.

Having determined that the correct four-month period was December 18, 2013, through April 17, 2014, we further determine that the trial court made findings of fact regarding Mother's willful failure to support encompassing the correct four-month period despite its miscalculation. The trial court found that Mother had willfully failed to support the Children from as early as April 2012, when Petitioner was awarded custody, through Mother's incarceration in May 2014. Since the trial court's finding regarding the time period that Mother willfully failed to support the Children necessarily included a finding that Mother willfully failed to support from December 18, 2013, through April 17, 2014, the trial court thereby found that Mother had willfully failed to support the Children during the determinative period. As such, in this case, the miscalculation of the relevant statutory period on this issue constitutes harmless error.[12]

The trial court clearly found that Mother's claim that she had provided gifts for the Children was not credible. Mother admitted at trial that she paid no financial support toward the care of the Children for a majority of the relevant period. Mother did state that she had provided small gifts, such as sunglasses and candy, for the Children. Such gifts, at most, constitute mere token support. *See* Tenn. Code Ann. § 36-1-102(1)(B) (defining "token support" as "support, under the circumstances of the individual case, [which] is insignificant given the parent's means"). We therefore conclude that the record does not preponderate against the trial court's finding that Mother did not provide support for the Children.

We next must determine whether clear and convincing evidence supports the trial court's finding that Mother's failure to financially support the Children was willful. Merely demonstrating that a parent did not support his or her children financially during the statutorily determinative period is not sufficient to prove this ground. *See In re M.J.B.,* 140 S.W.3d 643, 655 (Tenn. Ct. App. 2004). It is often necessary for the trial

---

[12] Again, we emphasize that this determination does not reflect a conclusion that the miscalculation of the relevant period should be harmless error in every case. In the case at bar, due to the extensive findings of fact by the trial court regarding the ground of willful failure to support, the miscalculation of the relevant period was harmless.

15

court to consider circumstantial evidence when determining a parent's intent. *See In re Audrey S.,* 182 S.W.3d at 863-64.

Mother argues that any failure to support on her part is not willful due to her limited means. The trial court found in relevant part as follows regarding Mother's willfulness in her failure to support her children:

> During the course of this hearing, the mother testified that she was able to work, and had in fact applied for "thousands" of jobs. However, when questioned on cross-examination, the mother could only name three places where she remembered applying for a job. During the course of the March 31st, 2015 hearing, the mother informed the court that she was going to apply for a job on that date (March 31, 2015) at Ryan's, and that she had another job interview the next day at McDonald's. However, when questioned about this during the September 4th, 2015 hearing, the mother admitted that she only went to one interview and did not get that job. However, the mother testified that she had recently taken a job with a siding company. However, the court takes judicial notice of the fact that the mother's total pay history provided to the court from March through May of 2015 was a total of $131.08. The court does not find [Mother's] testimony regarding her job applications, and her diligent search for employment, to be at all credible. The court finds she has made very little, if any, effort to gain ongoing gainful or meaningful employment to support herself.

> * * *

> The court finds this especially troubling, given the fact that the mother testified that she was, and is, a smoker. The mother testified that she smokes a minimum of one pack per day, at approximately $4.00 per pack. The court notes this to be, at a minimum, $120.00 per month, and the court finds it troubling that the mother chooses to supply her own desires and habits, rather than in any way providing any form of support to either of her children, at any time since they have been in the custody of the petitioner since 2012 through the date of this hearing.

> The court wishes to note here that the mother's testimony regarding her search for "thousands" of jobs is not at all credible. . . . The court finds that the mother has made little, if any, efforts to obtain a job, and the court finds, based upon all of the proof before the court, that the mother has no means to support her children and little if any means to support herself.

The court finds that the mother has made no real progress in becoming employed, even though the court finds she is very able physically and mentally to be gainfully employed. The court sees no real effort or desire on the mother's part to become employed to support herself or her children.

A parent's unemployment or underemployment is not, by itself, indicative of willfulness but requires the court to determine whether that unemployment or underemployment was voluntary or involuntary. *See In re Matthew T.,* No. M2015-00486-COA-R3-PT, 2016 WL 1621076 at *10 (Tenn. Ct. App. Apr. 20, 2016) (citing *In re M.P.J.,* No. E2008-00174-COA-R3-PT, 2008 WL 3982912 at *10 (Tenn. Ct. App. Aug. 27, 2008)). The trial court's factual finding of whether a parent is voluntarily unemployed or underemployed is entitled to a presumption of correctness unless the evidence preponderates against that finding. *See Miller v. Welch,* 340 S.W.3d 708, 712-13 (Tenn. Ct. App. 2010). A determination of whether a parent is voluntarily unemployed "'may be based on any intentional choice or act that adversely affects a parent's income.'" *See In re Matthew T.,* 2016 WL 1621076 at *10 (quoting Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii)(I)) (emphasis omitted). "[T]he reasons motivating a parent's employment decision have some bearing on the determination of whether they are voluntarily unemployed." *In re Matthew T.,* 2016 WL 1621076 at *10 (citing *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005). A parent's turning down or failing to pursue employment opportunities can support a finding of voluntary unemployment. *See In re Jamie G.,* 2015 WL 3456437 at *14-16; *In re M.P.J.,* 2008 WL 3982912 at *10.

Mother testified that she began seeking employment following her incarceration and that she had submitted "thousands" of employment applications since that time. The trial court found Mother's testimony regarding her diligence in seeking employment as not credible. Petitioner presented evidence that Mother refused a job opportunity that was offered to her following her incarceration. The job opportunity that Mother turned down, however, did not occur during or prior to the relevant four months such that it would affect her income during the determinative period. Mother's unemployment and nonpayment of child support do not, by themselves, constitute willful failure to support. *See In re Matthew T.,* 2016 WL 1621076 at *10. In this case, the evidence provided in the record is insufficient to support the trial court's finding that Mother's failure to support was willful <u>during the determinative four-month period</u>. Inasmuch as Petitioner has failed to clearly and convincingly prove that Mother willfully failed to support the Children during the four-month statutory period, we conclude that the trial court erred in terminating Mother's parental rights based on her willful failure to support the Children. We therefore reverse the trial court's judgment as to this statutory ground.

## C.  Abandonment by Wanton Disregard for the Welfare of the Children

The trial court also found that Mother abandoned the Children by exhibiting wanton disregard for their welfare prior to her incarceration.  See Tenn. Code Ann. § 36-1-102(1)(A)(iv).  Mother contends that her actions did not constitute a wanton disregard for the welfare of the Children. Mother specifically argues that she made efforts to attend drug treatment programs and that no evidence existed that she used drugs during the five months prior to trial.  Mother also offered explanations during trial as to the cause of her substance abuse.  Mother stated that her substance abuse addiction became "bad" in 2013 because she became depressed when Petitioner would not allow her to visit the Children and Petitioner's boyfriend called her a "druggie" in the presence of the Children.  While we commend Mother for her efforts to overcome her drug addiction, we agree with the trial court's conclusion that Mother's actions constituted wanton disregard for the welfare of the Children.

Tennessee Code Annotated § 36-1-102(1)(A)(iv) provides in pertinent part:

> (iv)  A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child . . . .

(Emphasis added.)  A parent's actions constituting wanton disregard for the welfare of the Children are not restricted to only the four-month period prior to incarceration.  *See In re Audrey S.,* 182 S.W.3d at 871.  This Court has consistently held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.,* 182 S.W.3d at 867-68; *see also In re K.F.R.T.,* No. E2015-01459-COA-R3-PT, 2016 WL 908926 at *4 (Tenn. Ct. App. Mar. 10, 2016).  Moreover, "[w]anton disregard for the welfare of the child can be established by the parent's previous criminal conduct along with a history of drug abuse." *In re S.L.A.,* 223 S.W.3d 295, 299 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. Apr. 2, 2007).

In this case, by Mother's own admission, Mother was using controlled substances heavily during the months prior to her incarceration.  Mother also admitted to failing a

drug screen for methamphetamine in 2014 prior to her incarceration. Although Mother claims that she had completed drug treatment prior to her incarceration, she was unable to present proof thereof to the court. Mother also was not visiting the Children during this time. Petitioner established that while Mother would promise the child, Selena L., to return to visit the child the following week, she failed to appear. Mother participated in criminal activity prior to her incarceration which included theft and several drug offenses. On October 7, 2014, Mother pled guilty to felony theft of property, two counts of possession of methamphetamine, possession of amphetamine, and two counts of possession of drug paraphernalia.[13]

As Mother notes, the record contains no evidence of any use of controlled substances for five months prior to trial. Mother further asserts that she was employed, sober, and maintained stable housing through family support at the time of trial. Although a parent's recent sobriety may be a factor relevant to the best interest analysis, Mother's conduct prior to her incarceration, including both her criminal activity and her illegal drug use, clearly and convincingly constituted a wanton disregard for the welfare of the Children. The trial court did not err in terminating Mother's parental rights based on this statutory ground.

## V. Best Interest of the Children

Mother contends that the trial court did not fully consider the statutory factors set forth in Tennessee Code Annotated § 36-1-113(i) and that the trial court's reasoning does not support a finding that termination of Mother's parental rights is in the best interest of the Children. We disagree. The trial court's finding by clear and convincing evidence that termination of Mother's parental rights is in the best interest of the Children is supported by a preponderance of the evidence.

When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005); *see also In re Carrington H.*, 483 S.W.3d at 507, 523 (Tenn. 2016) ("'The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination.'") (quoting *In re Angela E.*, 303 S.W.3d 240, 254 (Tenn. 2010)). Tennessee Code Annotated § 36-1-113(i) (Supp. 2015) provides a list of factors the trial court is to consider when determining if termination of parental rights is in the child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *See In re*

---

[13] Mother was convicted of these crimes during her incarceration. The convictions, however, resulted from Mother's actions prior to her incarceration.

19

*Carrington H.*, 483 S.W.3d at 523; *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). Furthermore, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

(1)      Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2)      Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3)      Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)      Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)      The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)      Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)      Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)      Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian

from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

The trial court made the following findings of fact regarding the best interest analysis:

The court finds that the mother has not made such an adjustment of circumstances, conduct or conditions, to make it safe and in the best interest of these two children to return the children to her home. The court finds that at all times during the pendency of this matter, that the mother has had no stable home of her own, nor has she had any legal means to support herself or her children. The court finds, based upon the evidence before the court, this remains to be true. The court finds that the mother has failed to effect a lasting adjustment in her life and/or to her lifestyle. The court finds that the mother has failed to make any reasonable efforts or attempts to utilize the available social services, other than by the mother's own self-serving testimony that she was going to begin to get counseling. However, the court notes that the mother testified that on August 24, 2015 she finally went to her first counseling appointment. The court finds this to be a very unconvincing effort, given all of the time that the mother has had to begin counseling and to be making progress. The court has no evidence before it that the mother has made any real progress regarding all of the negative issues in the mother's life.

The court finds that these two children have been removed from the mother's custody for at least three years. The court finds that the mother's efforts to just now begin utilizing social services one time, one day prior to what was supposed to be the final hearing date in this matter, does not convince the court of the mother's willingness or ability to utilize the positive resources available to her. The mother's actions give the court great cause for continuing concern and alarm for these two children if placed back in the custody of the mother. The court finds that this mother has not maintained regular visitation with the children, and therefore, given the lack of regular visitation caused by the mother's own wil[l]ful actions, this court has no indication of any real meaningful relationship existing between this mother and either of her children at this point, given the children's ages and the time that has passed. This is especially true with

21

the three (3) year old child, who has essentially had no relationship whatsoever with her mother during the entirety of her life. By the mother's own testimony, she still is not ready even now to have full time custody and care of both children. The court finds that to keep continuity in these children's lives together, with what is the only home that the three (3) year old has ever known, and most likely the only stable home that the oldest child has ever known, then it is in the best interest of these children for the mother's parental rights to be terminated.

The court specifically finds that these children have been cared for and nurtured by the petitioner for the last three years of their lives. The court takes judicial notice of the fact that this is roughly 50% of the older child's life and more than 90% of the younger child's life. The court finds that this mother has effectively neglected her children during the same period of time by her own wil[l]ful choices and actions. Based upon all of the above, the court finds that the termination of the mother's parental rights is in the best interest of these minor children, and this finding is made by clear and convincing evidence.

Following our thorough review of the record, we agree with the trial court's determination regarding best interest. Mother admits to a previous substance abuse addiction, including prior methamphetamine use. Mother claims that she requested help from individuals to no avail. Mother explained that she was not able to resume custody of her children at the time of trial, approximately three years after custody had been placed with Petitioner. When asked why she was still not "on [her] feet," Mother referenced her controlled substance addiction. Although Mother testified that she has been sober since her release from incarceration, she failed to provide any admissible documentation.

Mother has failed to make an adjustment in her life that would make it safe and in the Children's best interest to be returned to her home. Mother acknowledged that she was not able to resume custody of her children at the time of the trial. Mother further testified that she was currently residing with a family member whom she admitted had a history of criminal activity including, methamphetamine charges. Mother did not visit the Children for approximately one year prior to Mother's eight-month incarceration in 2014. The evidence supports a determination that a substantial parent-child relationship is lacking between the Children and Mother. Mother had appeared for only one visit following her release from incarceration as of March 31, 2015. She made little attempt to rebuild the parent-child bond. We conclude that the evidence does not preponderate against the trial court's finding by clear and convincing evidence that termination of Mother's parental rights was in the Children's best interest.

22

## VII. Conclusion

For the foregoing reasons, we reverse the trial court's finding by clear and convincing evidence of the statutory ground of abandonment by willful failure to provide financial support for the Children. We affirm the trial court's judgment in all other respects, including the termination of Mother's parental rights to the Children. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment terminating Mother's parental rights and collection of costs assessed below. Costs on appeal are assessed to the appellant, Brandy L.

_____
THOMAS R. FRIERSON, II, JUDGE